GEOFFREY S. BERMAN
United States Attorney for the
Southern District of New York
By:     MÓNICA P. FOLCH
        SAMUEL DOLINGER
Assistant United States Attorneys
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel.: (212) 637-6559/2677
E-mail: monica.folch@usdoj.gov
        samuel.dolinger@usdoj.gov

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> MICHAEL N. SCHWARTZ, <br><br> Defendant. | Case No. 19 Civ. 7256 |

Plaintiff the United States of America (the "United States"), by its attorney, Geoffrey S. Berman, United States Attorney for the Southern District of New York, alleges upon information and belief as follows:

**INTRODUCTION**

1. The United States brings this civil action seeking to permanently enjoin defendant Michael N. Schwartz from organizing, promoting, or selling tax shelters and reportable transactions.

2. Schwartz, a sophisticated professional accountant who has served as partner-in-charge of KPMG's New York region international tax practice and tax partner with the Finance

and Treasury Group of PricewaterhouseCoopers, has organized, promoted, or sold tax shelters designed to cheat the Government out of millions of dollars in taxes.

3. The United States brings this civil action pursuant to I.R.C. sections 7402 and 7408 to enjoin Schwartz, and all those in active concert or participation with him, from directly or indirectly:

    i. Organizing, promoting or selling any plan or arrangement—including but not limited to the foreign currency options tax schemes described in this complaint or any similar plans or arrangements—that advises or assists others in violating internal revenue laws or unlawfully evading the assessment or collection of their federal tax liabilities;

    ii. Engaging in conduct subject to penalty under I.R.C. § 6700, including, but not limited to, making, in connection with the organization or sale of any plan or arrangement, any statement about the securing of any tax benefit that Schwartz knows or has reason to know is false or fraudulent as to any material matter;

    iii. Engaging in conduct subject to penalty under I.R.C. § 6707, including, but not limited to, failing to file a return or statement with the IRS that identifies and describes any reportable or listed transaction, any potential tax benefits expected to result from that transaction, and other information required by statute; and

    iv. Engaging in any conduct designed or intended to obstruct or delay an IRS investigation or audit.

## JURISDICTION AND VENUE

4. The United States brings this suit pursuant to 26 U.S.C. §§ 7401, 7402 and 7408, at the direction of the Attorney General of the United States and at the request of, and with the authorization of, the Commissioner of the IRS, a delegate of the Secretary of the Treasury of the United States.

5. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1340, and 1345, and 26 U.S.C. §§ 7402(a) and 7408(a).

6. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b) because Defendant resides in this district and a substantial portion of the events giving rise to this action took place in this judicial district.

## PARTIES

8. Plaintiff is the United States of America.

9. Defendant Michael N. Schwartz is an individual who resides at 425 East 78th Street, Apartment 6C, New York, New York 10075. Schwartz is also the debtor in a related Chapter 7 bankruptcy proceeding captioned *In re Michael N. Schwartz*, No. 15-12746 (MKV) (Bankr. S.D.N.Y.), and the defendant in a bankruptcy adversary proceeding captioned *United States v. Schwartz*, No. 16-1046 (MKV) (Bankr. S.D.N.Y.).

10. Schwartz is a certified public accountant licensed by the State of Pennsylvania. He has a B.S. in Accounting from Pennsylvania State University and an M.S. in Taxation from Drexel University.

11. Schwartz is currently self-employed as a certified public accountant. He was previously a Senior Manager and Director at the accounting, tax, and financial advisory firm WeiserMazars LLP. He also previously worked as a tax partner with the Finance and

Treasury Group of PricewaterhouseCoopers. Before that, Schwartz worked at KPMG for more than 13 years.

## SCHWARTZ'S TAX SHELTER TRANSACTIONS

12. From 2002 to 2004, Schwartz and two companies he owned, Multinational Strategies, LLC and Coastal Trading, LLC, organized, promoted, and sold unregistered tax shelters known as the Deerhurst Trading Strategies transaction, the Castle transaction, and the MM-MNS transaction, described below.

## THE DEERHURST TRADING STRATEGIES TRANSACTION

13. In 2000, Schwartz developed the Deerhurst Trading Strategies transaction (the "DTS Transaction"), which involved the use of foreign currency options contracts in an effort to generate losses that taxpayers could claim on their tax returns through reliance on specific tax rules. By the end of that same year, 29 people invested more than $34 million in the DTS Transaction, purportedly generating more than $260 million in losses.

14. One of the investors in the DTS Transaction was Carlos Sala, who claimed a tax loss deduction of more than $60 million in 2000, having paid only $728,000 out of pocket for the options that generated the loss. That deduction was later denied by the United States Court of Appeals for the Tenth Circuit, on the ground that the transaction lacked economic substance in light of the fact that the loss generated "was designed to be entirely artificial." *Sala v. United States*, 613 F.3d 1249, 1253 (10th Cir. 2010).

15. In simplified terms, the DTS Transaction consisted of the following steps: A taxpayer invested a sum of money to enter into a combination of long and short options in foreign currency. *Sala*, 613 F.3d at 1250-51. The taxpayer received premium payments for his sale of short options contracts (the short options), and the taxpayer made premium payments to buy the options contracts (the long options). *Id.* at 1251. The long and short positions

4

essentially offset one another, so the taxpayer was largely able to use the premiums he received from the sale of the short position to fund the bulk of his purchase of the long position. *Id.* The taxpayer used his own money to pay for the rest of the long position. *Id.*

16. The taxpayer then transferred these option positions to a partnership in exchange for an interest in the partnership. *Sala*, 613 F.3d at 1251. Relying on the rule from *Helmer v. Commissioner*, 34 T.C.M. (CCH) 727 (1975), that a contingent liability (such as a short option) does not qualify as a liability when calculating a partner's basis in a partnership, the taxpayer included the cost of the long options—but disregarded his obligations under the offsetting short options—to calculate his basis in the partnership. *Id*. at 1250-51. Before the year-end, the partnership closed out the offsetting options and liquidated. *Id.* Upon liquidation, the taxpayer's inflated basis in the partnership interest attached to the foreign currency options received in the liquidating distribution, *see* 26 U.S.C. § 732(b). *Id.* at 1251-52. When the taxpayer closed out the foreign currency options (for a net amount that reflected their largely offsetting value), the taxpayer claimed a loss equal to the difference between the inflated basis that attached to the options and the ultimate sale price. *Id.*

17. In this way, the DTS Transaction provided the taxpayer the ability to claim a large tax loss without sustaining real economic loss. For the reasons set forth in the *Sala* decision, the DTS Transaction lacked economic substance and the losses generated were designed to be entirely artificial. *Sala*, 613 F.3d at 1253.

### THE MAJOR-MINOR TRANSACTIONS

18. In 2002, Schwartz developed the Castle Transaction and the MM-MNS Transaction (the "Major-Minor Transactions"), which involved the use of foreign currency options contracts in an effort to generate losses that taxpayers could claim on their returns through reliance on specific tax rules.

19. A total of 126 individuals participated in two groups of the Major-Minor Transactions, the Castle Transaction and the MM-MNS Transaction. Thirty-eight individuals invested an aggregate of approximately $10.5 million between September and December 2002 in the Castle Transaction, for a total expected tax benefit of more than $61 million from the transaction. And 88 individuals invested an aggregate of approximately $25.3 million between September and December 2002 in the MM-MNS Transaction, for a total expected tax benefit of about $169 million.

20. One of those investors was Terry Wright, who, along with his wife, Cheryl Wright, claimed a tax loss of over $3 million in 2002, having only paid about $30,000 out of pocket for the options that generated the purported loss. *Wright v. Commissioner*, 809 F.3d 877, 880 (6th Cir. 2016).

21. This transaction was examined by the Sixth Circuit Court of Appeals, which found that "[a]lthough these transactions involve large sums of dollars, euros, and krones, [they] appear to have subjected the Wrights to little actual economic risk because the four options in the major-minor transactions offset each other," and concluded that "the Wrights appear to have engaged in the major-minor transactions primarily to generate the desired tax loss."[1] *Wright*, 809 F.3d at 884.

22. These transactions are called "major-minor" transactions because they involve options on a "major" currency that are offset by options in a "minor" currency. *Wright*, 809 F.3d

---

[1] In *Wright v. Commissioner*, the only question before the court was whether the euro option contracts at issue in the Major Minor transaction qualified as "foreign currency contracts under 26 U.S.C. § 1256." 809 F.3d at 884-85. The court therefore did not decide whether the transaction was a prohibited tax shelter lacking economic substance. However, the *Wright* court noted that the IRS "is empowered to prevent taxpayers from claiming tax losses based upon transactions involving offsetting foreign currency options by challenging specific transactions under the economic substance doctrine, as lacking in economic substance." *Id.* at 885.

6

at 879-80.  Under 26 U.S.C. § 1256, a major currency is the subject of futures trading, while a minor currency is not.  *Id.*

23.     Schwartz's Major-Minor Transactions generally worked as follows: The taxpayer arranged a series of foreign currency options with a counterparty.  *Wright*, 809 F.3d at 880.  The taxpayer sold the counterparty a Danish krone put option and a krone call option with identical terms (the short options).  *Id.*  The taxpayer also bought from the counterparty a euro call option and a euro put option with identical terms (the long options).  *Id.*  Each put gave its owner the right to sell the currency at a specific exchange rate against the US dollar; each call option gave its owner the right to buy the currency at a specific exchange rate against the US dollar.  *Id.* at 879-80.  Because the krone was closely tied to the euro, the two calls and the two puts would largely offset each other.  *Id.* at 880.  Thus, the premiums the taxpayer received from the counterparty (for the short options) largely offset the premiums the taxpayer paid the counterparty (for the long options).

24.     Because the transaction aimed to create an artificial loss, the taxpayer then assigned his rights under the depreciated long euro option (either the call or the put) to a charity, as well as his obligations under the appreciated (and offsetting) short krone option.  *Wright*, 809 F.3d at 880.  The taxpayer took the position that the assignment of the losing euro option was a recognition event under 26 U.S.C. § 1256(c) and claimed a loss, *see Greene v. United States*, 79 F.3d 1348, 1353-58 (2d Cir. 1996)) (donation of regulated futures contract to charity is a recognition event).  *Wright*, 809 F.3d at 880.  However, the taxpayer did not recognize the offsetting gain on the krone option, relying on the fact that the krone is a "minor currency" that is not subject to section 1256(c).  *Id.*  On the same day as the assignment to the charity, the

taxpayer and the counterparty terminated the remaining options, triggering offsetting gains and losses.  *Id.*

25. Thus, the Major-Minor Transactions resulted in taxpayers claiming a large tax loss with no real economic loss.  *Id.*

### SCHWARTZ'S TAX SHELTER TRANSACTIONS ARE UNLAWFUL

26. The then-applicable version of 26 U.S.C. § 6111[2] required that "[a]ny tax shelter organizer shall register the tax shelter with the Secretary (in such form and in such manner as the Secretary may prescribe) not later than the day on which the first offering for sale of interests in such tax shelter occurs."  26 U.S.C. § 6111(a)(1) (2002), *repealed* Oct. 22, 2004.

27. I.R.C. section 6707 penalized any tax shelter organizer who failed to file with the IRS a return or statement that identified and described any reportable or listed transaction.

28. Prior to the statute's 2004 repeal, under I.R.C. section 6111(c)(1), a "tax shelter" was defined as "any investment—(A) with respect to which any person could reasonably infer from the representations made, or to be made, in connection with the offering for sale of interests in the investment that the tax shelter ratio for any investor as of the close of any of the first 5 years ending after the date on which such investment is offered for sale may be greater than 2 to 1," and (B) which is, "a substantial investment."

29. Until its repeal, section 6111(c)(4) defined a "substantial investment" as an investment where "(A) the aggregate amount which may be offered for sale exceeds $250,000, and (B) there are expected to be 5 or more investors."

---

[2]  This version of 26 U.S.C. § 6111 and the corresponding version of 26 U.S.C. § 6707, referenced below, were enacted on August 5, 1997 as part of the Taxpayer Relief Act of 1997, Pub. L. 105–34.  They were repealed on October 22, 2004, when they were replaced with the American Jobs Creation Act of 2004, Pub. L. 108–357.  Because the transactions in question occurred before 2004, we refer to the pre-2004 versions of § 6111 and § 6707.

30. Schwartz was a "tax shelter organizer" required to register a shelter pursuant to then-applicable I.R.C. section 6111(a) because he was a principal organizer of the DTS Transaction and the Major-Minor Transactions. Specifically, Schwartz structured test account programs for investors, prepared documentation for the transactions, and assisted with the organization of various aspects of the transactions. Additionally, Schwartz organized investors' S Corporations, and he prepared organizational documents and partnership agreements for investors.

31. Schwartz also participated in the sale of interests in the transactions. Specifically, Schwartz had direct contact with prospective investors, providing investors with various documents, including offering memoranda and other documents, and he explained the transactions' risks and rewards.

32. The DTS Transaction tax shelter ratios for all investors far exceeded the 2 to 1 ratio specified in I.R.C. section 6111(c)(1). For instance, the tax shelter ratio for Carlos Sala's participation in the DTS Transaction, as described above, was a minimum of 6.71 to 1. In fact, the lowest tax shelter ratio of any sold DTS Transaction equaled 4.83 to 1.

33. In addition, the DTS Transaction was a substantial investment. The DTS Transaction's total aggregate investment exceeded $200 million. Further, 29 individuals invested in the Transaction in 2000.

34. With regard to Schwartz's Major-Minor Transactions, the tax shelter ratios for all investors were also significantly greater than the 2 to 1 ratio. Indeed, the lowest tax shelter ratio for any investor in the Major-Minor Transactions was 2.15 to 1, and the highest ratio was 100 to 1.

35. In addition, each of the Major-Minor Transactions was a substantial investment. The Major-Minor Transactions' total aggregate investment exceeded $3 billion. Further, more than 100 individuals invested in the Major-Minor Transactions in 2000.

36. Schwartz did not register the DTS Transaction or the Major-Minor Transactions.

37. In early 2004, the IRS commenced an investigation into transactions organized, promoted, and sold by Schwartz's companies, Multinational Strategies, LLC ("MNS"), and Coastal Trading LLC ("Coastal").

38. On April 21, 2004, the IRS sent letters to MNS and Coastal requesting information about the transactions. Those letters noted that "any person who organizes a potentially abusive tax shelter or sells an interest in such a tax shelter (including any material advisor)" must maintain a list identifying each purchaser of an interest in the shelter, and made requests for such lists.

39. The IRS subsequently determined that the DTS Transaction and the Major-Minor Transactions were tax shelters required to be registered by their organizers under I.R.C. § 6111, and that Schwartz was a tax shelter organizer who was required to register the transactions pursuant to I.R.C. § 6111 and associated regulations.

40. In July and August 2015, the IRS assessed penalties against Schwartz pursuant to I.R.C. section 6707.

41. The IRS determined that Schwartz's failure to register the tax shelters resulted in penalties under I.R.C. section 6707 in the amount of $35,490,134.

42. On or about September 17, 2015, the IRS issued notice and demand letters, for each of the years 2000 and 2002, notifying Schwartz of the penalty assessments.

43. Approximately three weeks later, on October 8, 2015, Schwartz filed for bankruptcy. He listed the $35,490,134 penalty as his only liability and the IRS as his only creditor. Schwartz's debt is being resolved through a stipulation in the bankruptcy proceeding. *See* Exhibit A.

### Permanent Injunction Under I.R.C. §§ 7402, 7408

44. The allegations in paragraphs 1 through 43 are repeated and realleged as though set forth fully herein.

45. I.R.C. § 7402(a) authorizes the Court to issue orders of injunction as necessary and appropriate for the enforcement of the internal revenue laws. The remedies provided under I.R.C. § 7402(a) are in addition to and not exclusive of any and all other remedies the United States may have to enforce the internal revenue laws.

46. I.R.C. § 7408(a) authorizes a district court to enjoin persons and entities who have engaged in conduct subject to penalty under I.R.C. §§ 6700, 6701, 6707, or 6708.

47. The DTS Transaction and the Major-Minor Transactions were "tax shelters" as defined under then-applicable I.R.C. section 6111(c), because they met both the tax shelter ratio test under I.R.C. § 6111(c)(1)(A) and the substantial investment test under I.R.C. section 6111(c)(1)(B).

48. Schwartz was a principal organizer of the DTS Transaction and the Major-Minor Transactions pursuant to then-applicable I.R.C. section 6111(a).

49. Schwartz had a duty to register the DTS Transaction and the Major-Minor Transactions under then-applicable I.R.C. section 6111(a)(1).

50. Schwartz failed to file with the IRS a return or statement that identifies or describes any of the reportable or listed transactions that he has organized and promoted.

51. Accordingly, Schwartz has engaged in conduct subject to penalty under I.R.C. section 6707, and should be enjoined from engaging in any further conduct that violates I.R.C. section 6707.

### Necessity of an Injunction

52. The IRS has identified at least three tax schemes that Schwartz organized, promoted, and/or executed, in which more than 200 individuals invested more than $60 million and claimed purported losses of more than $450 million.

53. Schwartz, a certified public accountant with over 20 year of experience in international tax law and regulation, was and is knowledgeable about the disclosure requirements, including under 26 U.S.C. § 6111 and § 6707. However, Schwartz's understanding of tax law and regulation did not deter him from organizing, promoting and/or executing the DTS Transaction and the Major-Minor Transactions. Indeed, Schwartz used his knowledge of tax law and regulation to organize, promote, or sell tax shelters designed to cheat the Government out of millions of dollars in taxes.

54. Schwartz continues to practice as a certified public accountant and is in a position to continue to organize, promote, and sell tax shelters.

### RELIEF REQUESTED

WHEREFORE, based on the foregoing allegations, the United States seeks judgment against Schwartz as follows:

55. That this Court, pursuant to I.R.C. §§ 7402 and 7408, permanently enjoin Defendant Michael N. Schwartz, including through the use of his representatives, agents, servants, employees, attorneys, family members, and/or any person or entity acting in active

concert or participation with him, directly or indirectly, by use of any means or instrumentalities, from all of the following:

    A.    Organizing, promoting, advising, implementing, carrying out, managing, or selling (directly or indirectly) the DTS transaction described in the complaint, the Castle transaction described in the complaint, the MM-MNS transaction described in the complaint, or any substantially similar plan or arrangement. The DTS transaction, the Castle transaction, and the MM-MNS transaction:

        i.    Use or involve foreign currency options contracts;

        ii.    Purport to generate non-financial losses stemming from the transfer of largely offsetting long and short foreign currency options; and

        iii.    Result in taxpayers claiming that the alleged losses from these transactions offset gains from unrelated activities of the taxpayers.

    B.    Organizing, promoting, advising, implementing, carrying out, managing or selling (or helping others to organize, promote, advocate, implement, carry out, manage or sell) any other tax shelter, plan, or arrangement, or a listed or reportable transaction, that violates the internal revenue laws or improperly incites or assists any person or entity to evade or avoid the assessment or collection of their federal tax liabilities or claim improper tax refunds;

    C.    Engaging in conduct subject to penalty under I.R.C. § 6700(a)(2)(A), including making, in connection with the organization of, participation in, or sale of any plan or arrangement, any statement about the securing of any tax benefit that Defendant knows or has reason to know is false or fraudulent as to any material matter;

    D.    Engaging in conduct subject to penalty under I.R.C. § 6700(a)(2)(B), including making statements as to the value of property or services when the value stated

exceeds 200% of the amount determined to be correct and is directly related to the amount of a tax deduction or credit;

  E. Engaging in conduct subject to penalty under I.R.C. § 6701, including aiding, assisting, procuring, or advising with respect to the preparation or presentation of any portion of a tax return, claim, or other document, that Defendant knows or has reason to know will be used as to a material matter arising under federal tax law, and will result in the understatement of the liability for the tax of another person;

  F. Engaging in conduct subject to penalty under I.R.C. § 6694, which penalizes a return preparer who prepares a return or claim for refund that contains an unreasonable position and the return preparer knew (or reasonably should have known) of the position;

  G. Engaging in conduct subject to penalty under I.R.C. § 6695(c), which penalizes a tax return preparer for failing to furnish an identifying number for a return that he prepared;

  H. Engaging in conduct subject to penalty under I.R.C. § 6707, which penalizes a material advisor for: (1) failing to timely file any return or statement under I.R.C. § 6111 as to a reportable transaction, currently a Form 8918, Material Advisor Disclosure Statement; (2) failing to obtain a Reportable Transaction Number; and (3) failing to furnish the Reportable Transaction Number to any person or entity as required by statute or regulation;

  I. Engaging in conduct subject to penalty under I.R.C. § 6708, which penalizes a material advisor who fails to make available, within twenty business days

after the date of a written request by the Internal Revenue Service, a list required to be maintained under I.R.C. § 6112(a);

   J. Engaging in conduct designed or intended to obstruct or delay an IRS investigation or audit, although Defendant may assert on his own personal behalf all statutory and constitutional rights to which he is entitled;

   K. Organizing, promoting, providing, advising or selling business or tax services that facilitate or promote noncompliance with federal tax laws; and

   L. Willfully engaging in conduct subject to penalty under any provision of the Internal Revenue Code.

56. That this Court further order that Defendant Michael N. Schwartz cooperate fully and actively with the IRS and any other agency of the government regarding any matter relating to the IRS's investigation of DTS, major-minor tax shelters including the Castle Transaction and the MM-MNS Transaction, any listed transaction and/or any transaction of interest about which the Defendant has knowledge or information, including by:

   A. Completely and truthfully disclosing all information in his possession to the IRS about which the IRS may inquire relating to the IRS's investigation of DTS, major-minor tax shelters including the Castle Transaction and the MM-MNS Transaction, any listed transaction and/or any transaction of interest about which the Defendant has knowledge or information, including but not limited to all information about activities of the Defendant, and present and former partners, employees, and agents of the Defendant;

   B. Volunteering and providing to the IRS any information and documents, records and/or other information in Defendant's possession, custody or control, that come to the Defendant's attention that may be relevant to the IRS's investigation of DTS,

major-minor tax shelters including the Castle Transaction and the MM-MNS Transaction, any listed transaction and/or any transaction of interest about which the Defendant has knowledge or information;

      C.      Assembling, organizing, and providing, in responsive and prompt fashion, and, upon request, expedited fashion, all documents, records, information, and other evidence in Defendant's possession, custody, or control as may be requested by the IRS relating to DTS, major-minor tax shelters including the Castle Transaction and the MM-MNS Transaction, any listed transaction and/or any transaction of interest about which the Defendant has knowledge or information; and

      D.      Providing information and/or testimony as requested by the IRS relating to DTS, major-minor tax shelters including the Castle Transaction and the MM-MNS Transaction, any listed transaction and/or any transaction of interest about which the Defendant has knowledge or information, including sworn testimony in court proceedings, and identifying witnesses who, to Defendant's knowledge and information, may have material information concerning DTS, major-minor tax shelters including the Castle Transaction and the MM-MNS Transaction, any listed transaction and/or any transaction of interest about which the Defendant has knowledge or information.

57. That this Court order that the United States is permitted to engage in post-injunction discovery to monitor and ensure compliance with the permanent injunction;

58. That this Court retain jurisdiction over this action for purposes of implementing and enforcing the final judgment and any additional orders necessary and appropriate to the public interest; and

59. That this Court grant the United States such other and further relief, including costs, as this Court deems appropriate.

Dated: August 2, 2019
        New York, New York

                                GEOFFREY S. BERMAN
                                United States Attorney for the
                                Southern District of New York

                      By:   *Mónica P. Folch*
                                MÓNICA P. FOLCH
                                SAMUEL DOLINGER
                                Assistant United States Attorneys
                                86 Chambers Street, 3rd Floor
                                New York, New York 10007
                                Tel.: (212) 637-6559/2677
                                E-mail: monica.folch@usdoj.gov
                                                samuel.dolinger@usdoj.gov