UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE UNITED STATES OF AMERICA,<br><br>　　　　　　　　　Plaintiff,<br><br>v.<br><br>MICHAEL N. SCHWARTZ,<br><br>　　　　　　　　　Defendant. | Case No. 19 Civ. 7256 |

**STIPULATED ORDER AND FINAL JUDGMENT OF PERMANENT INJUNCTION**

Plaintiff, United States of America, and Defendant Michael N. Schwartz ("the Parties") respectfully move the Court for entry of this Stipulated Order and Final Judgment of Permanent Injunction (the "Injunction"), and agree and stipulate as follows:

WHEREAS, the United States of America has filed a Complaint for Permanent Injunction and Other Relief under 26 U.S.C. §§ 7402, 7407 and 7408 of the Internal Revenue Code ("I.R.C.") against Michael N. Schwartz ("Defendant");

WHEREAS, Defendant voluntarily agrees and consents to this Injunction;

WHEREAS, accordingly, the Parties have agreed to settle this case in accordance with the terms of this Injunction;

NOW, THEREFORE, IT IS HEREBY STIPULATED, AGREED AND ORDERED that:

1.　Defendant admits that the Court has personal jurisdiction over him pursuant to 28 U.S.C. §§ 1340 and 1345, and subject matter jurisdiction pursuant to 26 U.S.C. §§ 7402(a), 7407(a) and 7408(a).

2.　Defendant admits, acknowledges, and accepts responsibility for the following facts:

      A.      In 2000, Schwartz developed the Deerhurst Trading Strategies transaction (the "DTS Transaction"), which involved the use of foreign currency options contracts in an effort to generate losses that taxpayers could claim on their tax returns through reliance on specific tax rules.

      B.      The DTS Transaction was examined in *Sala v. United States*, 613 F.3d 1249 (10th Cir. 2010). In that case, the Tenth Circuit Court of Appeals found that the transaction lacked economic substance in light of the fact that the loss generated "was designed to be entirely artificial." *Id.* at 1253.

      C.      In 2002, Schwartz developed the Castle Transaction and the MM-MNS Transaction (the "Major-Minor Transactions"), which involved the use of foreign currency options contracts in an effort to generate losses that taxpayers could claim on their returns through reliance on specific tax rules.

      D.      One of the Major-Minor Transactions was examined in *Wright v. Commissioner*, 809 F.3d 877, 880 (6th Cir. 2016). In that case, the Sixth Circuit Court of Appeals found that "[a]lthough these transactions involve large sums of dollars, euros, and krones, [they] appear to have subjected the [taxpayers] to little actual economic risk because the four options in the major-minor transactions offset each other," and concluded that "the [taxpayers] appear to have engaged in the major-minor transactions primarily to generate the desired tax loss." *Id.* at 884.

      E.      Schwartz did not register the DTS Transactions and the Major-Minor Transactions.

F.  The IRS determined that the DTS Transactions and the Major-Minor Transactions were tax shelters required to be registered by their organizers under I.R.C. § 6111.

G.  In July and August 2015, the IRS assessed penalties against Defendant pursuant to I.R.C. § 6707 that has been the subject of litigation and settlement in the Chapter 7 bankruptcy case *In re Schwartz*, 15-12746 (MKV) (Bankr. S.D.N.Y.).

3.  In settlement of the claims of the United States, Defendant agrees that, pursuant to I.R.C. §§ 7402, 7407 and 7408, Defendant Michael N. Schwartz, including through the use of his representatives, agents, servants, employees, attorneys, family members and/or any person or entity acting in active concert or participation with him, is permanently enjoined from directly or indirectly, by use of any means or instrumentalities:

A.  Organizing, promoting, advising, implementing, carrying out, managing, or selling (directly or indirectly) the Deerhurst Trading Strategies transaction described in the complaint, the Castle transaction described in the complaint, the MM-MNS transaction described in the complaint, or any substantially similar plan or arrangement. The Deerhurst Trading Strategies transaction, the Castle transaction, and the MM-MNS transaction:

   i.   Use or involve foreign currency options contracts;

   ii.  Purport to generate non-financial losses stemming from the transfer of largely offsetting long and short foreign currency options; and

   iii. Result in taxpayers claiming that the alleged losses from these transactions offset gains from unrelated activities of the taxpayers.

B.  Organizing, promoting, advising, implementing, carrying out, managing or selling (or helping others to organize, promote, advocate, implement, carry out, manage

3

or sell) any other tax shelter, plan, or arrangement, or a listed or reportable transaction, that violates the internal revenue laws or improperly incites or assists any person or entity to evade or avoid the assessment or collection of their federal tax liabilities or claim improper tax refunds;

  C. Engaging in conduct subject to penalty under I.R.C. § 6700(a)(2)(A), including making, in connection with the organization of, participation in, or sale of any plan or arrangement, any statement about the securing of any tax benefit that Defendant knows or has reason to know is false or fraudulent as to any material matter;

  D. Engaging in conduct subject to penalty under I.R.C. § 6700(a)(2)(B), including making statements as to the value of property or services when the value stated exceeds 200% of the amount determined to be correct and is directly related to the amount of a tax deduction or credit;

  E. Engaging in conduct subject to penalty under I.R.C. § 6701, including aiding, assisting, procuring, or advising with respect to the preparation or presentation of any portion of a tax return, claim, or other document, that Defendant knows or has reason to know will be used as to a material matter arising under federal tax law, and will result in the understatement of the liability for the tax of another person;

  F. Engaging in conduct subject to penalty under I.R.C. § 6694, which penalizes a return preparer who prepares a return or claim for refund that contains an unreasonable position and the return preparer knew (or reasonably should have known) of the position;

G. Engaging in conduct subject to penalty under I.R.C. § 6695(c), which penalizes a tax return preparer for failing to furnish an identifying number for a return that he prepared;

H. Engaging in conduct subject to penalty under I.R.C. § 6707, which penalizes a material advisor for: (1) failing to timely file any return or statement under I.R.C. § 6111 as to a reportable transaction, currently a Form 8918, Material Advisor Disclosure Statement; (2) failing to obtain a Reportable Transaction Number; and (3) failing to furnish the Reportable Transaction Number to any person or entity as required by statute or regulation;

I. Engaging in conduct subject to penalty under I.R.C. § 6708, which penalizes a material advisor who fails to make available, within twenty business days after the date of a written request by the Internal Revenue Service, a list required to be maintained under I.R.C. § 6112(a);

J. Engaging in conduct designed or intended to obstruct or delay an IRS investigation or audit, although Defendant may assert on his own personal behalf all statutory and constitutional rights to which he is entitled;

K. Organizing, promoting, providing, advising or selling business or tax services that facilitate or promote noncompliance with federal tax laws; and

L. Willfully engaging in conduct subject to penalty under any provision of the Internal Revenue Code.

4. Defendant will cooperate fully and actively with the IRS and any other agency of the government regarding any matter relating to the IRS's investigation of DTS, major-minor tax shelters including the Castle Transaction and the MM-MNS, any listed transaction and/or any

transaction of interest about which the Defendant has knowledge or information. Defendant agrees that his continued cooperation with the IRS's investigation shall include, but not be limited to the following:

    A.    Completely and truthfully disclosing all information in his possession to the IRS about which the IRS may inquire relating to the IRS's investigation of DTS, major-minor tax shelters including the Castle Transaction and the MM-MNS, any listed transaction and/or any transaction of interest about which the Defendant has knowledge or information, including but not limited to all information about activities of the Defendant, and present and former partners, employees, and agents of the Defendant;

    B.    Volunteering and providing to the IRS any information and documents, records and/or other information in Defendant's possession, custody or control, that come to the Defendant's attention that may be relevant to the IRS's investigation of DTS, major-minor tax shelters including the Castle Transaction and the MM-MNS, any listed transaction and/or any transaction of interest about which the Defendant has knowledge or information;

    C.    Assembling, organizing, and providing, in responsive and prompt fashion, and, upon request, expedited fashion, all documents, records, information, and other evidence in Defendant's possession, custody, or control as may be requested by the IRS relating to DTS, major-minor tax shelters including the Castle Transaction and the MM-MNS, any listed transaction and/or any transaction of interest about which the Defendant has knowledge or information; and

    D.    Providing information and/or testimony as requested by the IRS relating to DTS, major-minor tax shelters including the Castle Transaction and the MM-MNS, any

listed transaction and/or any transaction of interest about which the Defendant has knowledge or information, including sworn testimony in court proceedings, and identifying witnesses who, to Defendant's knowledge and information, may have material information concerning DTS, major-minor tax shelters including the Castle Transaction and the MM-MNS, any listed transaction and/or any transaction of interest about which the Defendant has knowledge or information.

5. The United States, including any of its agencies, will not introduce this judgment to establish Defendant's liability for civil or criminal penalty, except in an action to enforce the Injunction or for contempt; however, the United States is not precluded from introducing the Injunction into evidence, in any administrative, civil or criminal proceeding, to the extent permitted by the Federal Rules of Evidence, including, but not limited to, impeaching Defendant's testimony in the event he misrepresents the terms of the Injunction or indicates that he never agreed to the Injunction.

6. Defendant understands and agrees that nothing in this Stipulated Order and Final Judgment of Permanent Injunction shall be construed to preclude any other proceedings against or involving Defendant, whether administrative, civil or criminal, whether pending or subsequently commenced. The Parties further understand and agree that entry of this Stipulated Order and Final Judgment of Permanent Injunction neither precludes the IRS from asserting liability (e.g. the assessment of taxes, interest, or penalties) against Defendant for asserted violations of the Internal Revenue Code, nor precludes Defendant from contesting any such liability.

7. The United States will be allowed full post-judgment discovery to monitor compliance with the Injunction, limited to matters covered in this Injunction.

8. The Court will retain jurisdiction over this action for purpose of implementing and enforcing the final judgment and any additional orders necessary and appropriate to the public interest.

9. The Parties waive the right to appeal from the Injunction.

10. The Parties understand and agree that this Stipulated Final Judgment of Permanent Injunction and Order will be entered under Federal Rule of Civil Procedure 65 and will result in the entry, without further notice, of a Final Judgment in this matter.

11. The Parties understand and agree that the Parties will bear their own costs, including any attorneys' fees or other expenses of this litigation.

12. The Parties further understand and agree that if Defendant violates the Injunction, he may be subject to sanctions for contempt.

Dated: Hackensack, New Jersey
   April 23, 2019

SHAPIRO, CROLAND, REISER, APFEL
 & DI IORIO, LLP
*Counsel for the Defendant*

By: _____
  JOHN P. DI IORIO, ESQ.

Dated: New York, New York
   April 2, 2019
   Aug.

GEOFFREY S. BERMAN
United States Attorney for the
Southern District of New York
*Counsel for the Government*

By: _____
  MONICA P. FOLCH
  Assistant United States Attorney


Dated: New Yok, New York
   April 22, 2019

_____
MICHAEL N. SCHWARTZ
*Defendant*


**SO ORDERED:** The Clerk of Court is directed to close this case.

_____
**HON. VERNON S. BRODERICK** 8/8/2019
**UNITED STATES DISTRICT JUDGE**